**DEPARTMENT OF ENVIRONMENTAL
PROTECTION**

v.

**John EMERSON.**

Supreme Judicial Court of Maine.

Argued Oct. 1, 1992.
Decided Nov. 17, 1992.

Michael E. Carpenter, Atty. Gen., Phyllis Gardiner (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Daniel J. Perry (orally), Jack H. Simmons, Berman & Simmons, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

WATHEN, Chief Justice.

Defendant John Emerson, the owner of land in Durham containing a landfill, demolition debris and scrap tires, appeals from a judgment by the Superior Court (Androscoggin County, *Alexander, J.*) granting an injunction and assessing monetary penalties for violations of state environmental laws. On appeal defendant argues that he was entitled to a jury trial because the action is in essence a criminal prosecution. He argues in the alternative that he was entitled to a jury trial even if the action is civil because the penalties imposed are in the nature of damages. He also argues that the warrantless searches of his land violated the United States and Maine constitutions and that evidence resulting from those searches was improperly admitted. The State cross-appeals, arguing that the Superior Court failed to impose the minimum penalty required by the statute. 38 M.R.S.A. § 349(2) (1989).[1] We modify the penalty, and, as modified, we affirm the judgment of the Superior Court.

The factual background to this litigation has been described in an earlier appeal. *Department of Envtl. Protection v. Emerson*, 563 A.2d 762 (Me.1989). By the last estimate, defendant has accumulated 12 to 14 million tires covering more than 10 of defendant's 70 acres, and defendant has covered at least four acres with demolition debris or other waste. Most of the tires have been placed on the land since the Maine Solid Waste Management Act, 38 M.R.S.A. §§ 1301–1319–U (1989) took effect in 1973. From 1976 to 1989, defendant operated a landfill for the Town of Durham.

Defendant's property sits on a porous sand and gravel aquifer that is particularly vulnerable to contamination from waste disposal activities. Some tires are located near Newell Brook, a protected body of water which passes through the property. The Superior Court ruled in favor of the State in its complaint and found defendant in violation of solid waste disposal laws and rules.[2] The court treated the matter as an equitable proceeding and following a bench trial (1) permanently enjoined defendant from accepting additional waste or tires and ordered him to take remedial steps to comply with state environmental laws; (2) appointed a receiver to carry out the terms

---

1. The statute reads as follows:

   Any person who violates any provision of the laws administered by the department or terms or conditions of any order, regulation, license, permit, approval or decision of the board shall be subject to a civil penalty, payable to the State, of not less than $100 nor more than $10,000 for each day of that violation or, if the violation relates to hazardous waste, of not more than $25,000 for each day of the violation.

   38 M.R.S.A. § 349(2) (1989).

2. The court found the defendant in violation of three statutes:

   No boundary of any public or private solid waste disposal area shall lie closer than 300 feet to any classified body of surface water.

   38 M.R.S.A. § 421 (1989).

   It is unlawful for any person to establish, construct, alter or operate any waste facility without a permit issued by the board or commissioner.

   38 M.R.S.A. § 1306(1) (1989).

   Any municipal or private dump within the State established and maintained for the disposal of waste, rubbish or debris of any nature which might facilitate either the origin or spread of forest fires shall be operated under the following preventive measures. . . .

   12 M.R.S.A. § 9301 (1981).

of the injunction; and (3) assessed $20,000 in civil penalties against him. The present appeal followed.

## I.

Defendant first contends that the civil action of the State brought pursuant to 38 M.R.S.A. § 348 (1989)[3] so resembles a criminal proceeding that he was entitled to a jury trial. His argument focuses on the common elements set forth in the civil and criminal enforcement provisions, the stigma resulting from prosecution, the future legal consequences of prosecution, the statutory rationale of secondary deterrence, and the magnitude of the fine. We review the Superior Court's denial of a trial by jury for error of law. *State v. Freeman,* 487 A.2d 1175 (Me.1985).

■ The Maine Constitution guarantees the right to a jury trial in criminal prosecutions.[4] "Whether an offense defined by statute is civil or criminal is primarily a matter of statutory construction." *State v. Anton,* 463 A.2d 703, 705 (Me.1983). Although "substantial weight" is accorded a legislative expression of purpose, the inquiry is not resolved by relying on labels. Rather, we analyze the statutory scheme to determine whether its purpose or effect is so punitive as to negate the express legislative intention to authorize a civil action. *Id.* at 705–706; *State v. Freeman,* 487 A.2d at 1177.

■ Because the Legislature authorizes a civil and a criminal action for the same environmental violation within the same statute does not establish that the civil action has a punitive purpose. *See United States v. Ward,* 448 U.S. 242, 250, 100 S.Ct. 2636, 2642, 65 L.Ed.2d 742 (1980); *Helvering, Comm'r of Internal Revenue*

*v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). The civil and criminal actions in section 349 are distinguishable both in terms of the proof required and their effect. Although the civil and criminal actions require many of the same elements, the Attorney General must prove *scienter* in the criminal action, unlike in the civil action. *See* 17–A M.R.S.A. § 34(5) (1983) (requiring a culpable mental state for a criminal conviction unless the statute provides otherwise). Moreover, the injunctive relief in the civil action does not constitute an affirmative disability or restraint comparable to the arrest and detention present in *State v. Freeman,* 487 A.2d at 1177–78. *See Cook v. Naylor,* 573 A.2d 376, 377 (Me.1990) (finding that an action for a protective order under a domestic abuse statute did not entitle the defendant to a jury trial); *In re Shane T.,* 544 A.2d 1295, 1297 (Me.1988) (stating that an action for an injunctive-like order awarding custody did not entitle the defendant to a jury trial). . Similarly, plaintiff has failed to identify any stigma resulting from the civil action that approaches that which would result from a criminal proceeding.

■ Although the statute instructs the court to consider "[t]he importance of setting a civil penalty substantial enough to deter others from similar violations" (38 M.R.S.A. § 349(5)(D)), the daily penalty has coercion as the primary purpose. *See State v. Freeman,* 487 A.2d at 1179 (observing that the civil sanction serves to coerce and the criminal sanction to penalize). The fact that such a penalty may secondarily deter does not convert it into a criminal sanction. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 231–32, 95 S.Ct. 926, 932, 43 L.Ed.2d 148 (1975). The magnitude of the penalty, one

---

**3.** The statute reads in part:
In the event of a violation of any provision of the laws administered by the Department of Environmental Protection or of any order, regulation, license, permit, approval or decision of the Board of Environmental Protection or decree of the court, as the case may be, the Attorney General may institute injunction proceedings to enjoin any further violation thereof, a civil or criminal action or any appropriate combination thereof without re-

course to any other provision of law administered by the Department of Environmental Protection.
38 M.R.S.A. § 348(1) (1989).

**4.** "In all criminal prosecutions, the accused shall have a right ... [t]o have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity." Me.Const. art. I, § 6.

of several factors in the analysis, *State v. Anton*, 463 A.2d at 706, is consistent with a coercive purpose. The penalty in this case is an accumulation of fines imposed during the defendant's continued violation of the statute in complete disregard of the state warnings and a court order. The action before us is neither in purpose nor in effect a criminal proceeding entitling the defendant to a jury trial.

## II.

■ Defendant also argues that even though the action is civil, the damages sought by the State constitute a claim for money damages and entitles him to a trial by jury. The Maine Constitution includes a guarantee of a jury trial in civil cases. "In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced...." Me.Const., art. I, § 20. The Constitution excepts from its guarantee actions that historically were tried without a jury. "Thus matters of traditional equitable cognizance are triable to the court." 1 Field, McKusick, & Wroth, *Maine Civil Practice* § 38.1 at 550 (2d ed.1970) (citing *Farnsworth v. Whiting*, 106 Me. 430, 76 A. 909 (1910)). Here, the equitable jurisdiction of the Superior Court was invoked to grant injunctive relief authorized by statute. Courts of equity have traditionally proceeded "to dispose of the entire controversy and render complete relief." 1 Field, McKusick & Wroth, *supra* at 551. Recently we recognized the vitality of that tradition in *Town of Falmouth v. Long*, 578 A.2d 1168 (Me.1990). The present action is equitable in nature and involves only ancillary coercive civil penalties. Because of the contrary practice at common law, a jury trial is not required by the Constitution.

## III.

Finally, defendant contends that the Superior Court erred in admitting evidence

gathered as a result of warrantless searches conducted by an official of the Department of Environmental Protection in violation of the Maine Constitution and the Fourth Amendment to the United States Constitution. Defendant maintains that the part of his real estate containing tires and demolition debris was closed to the public and that the search of that area violated a reasonable expectation of privacy. Defendant also contends that the State's statutory basis for the warrantless search, 38 M.R.S.A. § 347(7) (1989),[5] was constitutionally invalid.

■ The Superior Court found that the public had regular access to the municipal landfill located on defendant's property. The landfill is situated next to the tires and demolition debris. State officials could and did legitimately enter the landfill. A gate existed at the landfill entrance to restrict dumping during hours in which the landfill was closed, but no fence restricted access to any of the other disposal areas. Although an attendant's shack was located on the roadway between the landfill and the other disposal areas, no physical barriers, screening devices, or boundary markers separated the landfill from the remainder of defendant's property. The area covered with tires and demolition debris constituted an open field in which defendant could not reasonably expect privacy. The Superior Court did not err in refusing to suppress the evidence resulting from the entry to defendant's land.

The State contends the Superior Court erred in imposing a penalty less than the minimum penalty of $100 for each day that the court concluded that defendant violated the law. We review for error of law. *Town of Falmouth v. Long*, 578 A.2d at 1172–73.

■ The applicable statute is subject to a minimum penalty of $100 for each day of that violation.[6] Although 38 M.R.S.A.

---

5. 38 M.R.S.A. § 347 (1989) has been repealed and replaced by 38 M.R.S.A. § 347–C (Supp. 1991).

6. Any person who violates any provision of the laws administered by the department or terms or conditions of any order, regulation, license, permit, approval or decision of the

§ 349(5) (1989 & Supp.1990) provides the court with a list of factors to consider in imposing a penalty, no provision is made for the court to impose less than the stated minimum. The Superior Court erred as a matter of law in imposing a lesser penalty. Because the court found that the defendant was in violation of the law for 106 days for disposal of demolition debris, 900 days for improper closure of the municipal landfill, and 910 days for disposal of tires, we modify the judgment to include the minimum civil penalty of $191,600.

The entry is:

Judgment modified to impose a civil penalty of $191,600 and, as modified, affirmed.

All concurring.

board shall be subject to a civil penalty, payable to the State, of not less than $100 nor more than $10,000 for each day of that violation. . . .

38 M.R.S.A. § 349(2) (1989). The statute has since been amended, but the minimum penalty remained the same. 38 M.R.S.A. § 349(2) (Supp.1991).